Jared Lefkowitz, Esq. (JL 6920)
48 Wall Street, 11th Floor
New York, NY 10005
Tel (917) 887-3920
Fax (917) 591-8991
Email: JaredLefkowitz@yahoo.com
*Attorney for Plaintiff Anjell Bowers*

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ SEP 2 3 2009 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ANJELL BOWERS,

        Plaintiff,

- against -

AFRICAN AMERICAN PLANNING
COMMISSION, INC. and
MATTHEW OKEBIYI,

        Defendants.
-----------------------------------------------------X

Case No.

09 4096

COMPLAINT

GERSHON, J
GOLD, M.J

JURY TRIAL DEMANDED

    Plaintiff Anjell Bowers, by and through her counsel Jared Lefkowitz, Esq., as and for her Complaint against the above named Defendants, alleges as follows:

    1. This is an action under Title VII of the Civil Rights Act of 1964, 42 USC §2000e et seq., 42 USC §1981, the NYS Human Rights Law §290 *et seq.*, and the NYC Administrative Code §8-101 *et seq.* for employment discrimination, retaliation, sexual harassment, emotional distress, and hostile work environment.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Anjell Bowers is a member of a "protected class," a female, and she resides at 5532 Avenue D, Apt. A-6, Brooklyn, NY 11203.

3. Upon information and belief defendant African American Planning Commission, Inc. ("AAPC") is a corporation organized and existing under the laws of the State of New York, with an address at P.O. Box 330-704, Brooklyn, NY 11233.[1]

4. Upon information and belief defendant Matthew Okebiyi is an individual who is the Executive Director of AAPC, with a business address at P.O. Box 330-704, Brooklyn, NY 11233.

5. This Court has subject mater jurisdiction based upon Title VII of the Civil Rights Act of 1964, 42 USC §2000e et seq., and 42 USC §1981, and supplemental jurisdiction pursuant to 28 USC §1367.

6. Plaintiff filed a Charge with the EEOC in or about November 2006, and the EEOC issued a Right to Sue Letter dated September 21, 2009.

7. It is noted that the length of the gap between the EEOC filing and the Right to Sue Letter was due to a clerical error by the EEOC in which they mistakenly

---

[1] AAPC has a street address which is known to plaintiff. However we do not include it in these publicly filed papers because AAPC is a domestic violence shelter and we are keeping the street address confidential.

failed to process plaintiff's claim. By letter dated July 21, 2009, the EEOC acknowledged that the Charge was timely filed in November 2006, and acknowledged the EEOC's clerical error. At the request of plaintiff by letter dated September 16, 2009, the EEOC thereafter issued an administrative Right to Sue Letter without any finding as to probable cause.

## FACTS APPLICABLE TO ALL COUNTS

8. Plaintiff is a 41 year-old African American female, and was employed as a Child Care Coordinator at defendant AAPC in the Serenity House Family Residence from June 19, 2005 until October 26, 2006.

9. Throughout her employment at Serenity House, plaintiff's direct supervisor was defendant Matthew Okebiyi.

10. The sexually charged atmosphere started when plaintiff first met defendant Okebiyi prior to accepting the job at AAPC. Plaintiff mispronounced his name, and he responded in a suggestive manner that plaintiff "could call him anything she wants."

11. Because the job at AAPC was a great opportunity for plaintiff, and the work she could do at that type of facility was so important, plaintiff was anxious to interpret Okebiyi's comment when they met as an offhand or harmless joke.

12. Plaintiff began working at defendant AAPC on June 20, 2005. On that very first day Okebiyi asked plaintiff to go to lunch with him. Plaintiff wanted to treat this as an innocent "welcome" gesture on her first day, but it became evident that it was not. This invitation by Okebiyi began a frequent and daily pattern of sexually harassing remarks and unwanted touching towards plaintiff.

13. Okebiyi tried on numerous occasions to persuade plaintiff to go on a date with him. He would frequently ask plaintiff to go to lunch with him, or dinner, he asked if she had plans after work, and he disregarded plaintiff's insistence that she would not see him socially or go on a date with him.

14. On one occasion, in July 2005, plaintiff was standing at the copy machine making copies. There was plenty of room for anyone passing by to do so without bumping into or touching plaintiff. Okebiyi approached plaintiff from behind and held her around her waist with both hands. When plaintiff objected and let him know that he should remove his hands he said, "I thought you were my sister," implying that because they are both African American that plaintiff should be willing to date him.

15. A few days later in July 2005, plaintiff was talking to another employee, Ms. Pipkins, and plaintiff was drinking a "Slim Fast." Okebiyi approached and stated to plaintiff that she did not need to drink that, she looked fine, and that she

did not need to lose weight. To highlight his point, Okebiyi reached out his hand, put it on plaintiff's waist, and squeezed.

16. Okebiyi touched plaintiff on and around her waist on four or five other occasions despite her protestations every time that this behavior was unwanted and unacceptable.

17. In addition to the frequent touching, Okebiyi would also continually stare at plaintiff, looking her up and down, making her feel extremely uncomfortable.

18. In August 2005, Okebiyi asked plaintiff to come into his office. Inside the office the lights were dimmed and soft music was playing. Okebiyi proceeded to tell plaintiff in a soft, low, "sexy" voice that his ex-girlfriend had cheated on him but that he was now ready to be in a serious relationship. Plaintiff told him, as she had repeatedly told him in the past, that she was not interested and that his behavior was unwanted and unacceptable.

19. In September or October 2005, the harassment had become so persistent that plaintiff complained to Marquis Brown, the Supervisor of Security of Family Safety at Serenity House. After explaining the harassing comments and looks that Okebiyi had subjected plaintiff to, Brown laughed and said that Okebiyi was probably "upset that you rejected him."

20. In January 2006, Okebiyi told plaintiff to accompany him in his car

to purchase work supplies. Plaintiff did not wish to go, but Okebiyi stated that plaintiff was being "insubordinate." So, plaintiff went on the errand. During the ride, plaintiffs fears about Okebiyi's true intent in ordering her to accompany him came to fruition. Okebiyi played the same love song on the compact disc player continuously, hitting rewind when the song ended and replaying it. The song's lyrics said something to the effect of "can't you see I love you?" and was a thinly disguised attempt by Okebiyi to once again persuade plaintiff to engage in a relationship with him.

21. Plaintiff complained again to Brown in April or May 2006, and informed him that Okebiyi frequently touched her. Brown replied, "you should have taken care of that a long time ago." He offered no further advice or solutions. He failed to commence an investigation or take remedial action.

22. It was clear that no one at Serenity House would investigate plaintiff's complaints inasmuch as not only was Okebiyi her supervisor but also the highest-ranking officer and owner of Serenity House.

23. All of the Board members are friends of his. But during her employment plaintiff did complain to AAPC's Chairperson, Bernadette Parker, about the sexual harassment she was suffering. Neither Ms. Parker nor anyone else at AAPC did anything in response to plaintiff's complaints except to ostracize and embarrass plaintiff in front of her co-workers, usurp her supervisory authority,

criticize her work performance, and exclude her from work-related decisions and activities -- actions that did not occur prior to plaintiff's complaints.

24. In early May 2006 another incident occurred. Plaintiff was going to lunch with another employee, Ms. Billie, and Okebiyi apparently saw them leaving. Okebiyi ran to catch up with them, confronted plaintiff in a hostile manner, and pointedly asked plaintiff why she never went to lunch with him. The incident was so disturbing that Ms. Billie, who witnessed the confrontation, was moved to comment that it appeared that Okebiyi was "obsessed" with plaintiff.

25. At some point Okebiyi recognized that plaintiff was intent on rejecting his advances, and perhaps recognized that he had been unlawfully sexually harassing plaintiff. He began improperly attacking plaintiff's work performance.

26. On May 23, 2006 plaintiff learned from her staff that Okebiyi had approached them and was coaxing them to make and file written complaints about plaintiff.

27. Okebiyi was trying to create a paper trail for supposed poor job performance by plaintiff, and this culminated in plaintiff's unlawful and discriminatory termination on October 26, 2006.

28. Due to the unlawful sexual harassment, discrimination, hostile work environment, and retaliation plaintiff suffered, plaintiff has experienced mental

distress, emotional distress, and humiliation.

## FIRST COUNT

29. For the reasons alleged above, defendant AAPC discriminated against plaintiff due to her sex, sexually harassed her, and subjected her to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 USC §2000e et seq., and 42 USC §1981.

30. Plaintiff seeks damages in excess of $150,000, future earnings, raises, bonuses, gratuities, other benefits she would have received, punitive damages to be determined, costs, attorneys fees, and any other damages available under the statute(s).

## SECOND COUNT

31. For the reasons alleged above, defendant AAPC retaliated against plaintiff due to her sex in violation of Title VII of the Civil Rights Act of 1964, 42 USC §2000e et seq., and 42 USC §1981.

32. Plaintiff seeks damages in excess of $150,000, future earnings, raises, bonuses, gratuities, other benefits she would have received, punitive damages to be determined, costs, attorneys fees, and any other damages available under the statute(s).

## THIRD COUNT

33. For the reasons alleged above, defendants discriminated against plaintiff due to her sex, sexually harassed her, and subjected her to a hostile work environment in violation of New York State Human Rights Law §290 *et seq.*

34. Plaintiff seeks damages in excess of $150,000, future earnings, raises, bonuses, gratuities, other benefits she would have received, punitive damages to be determined, costs, attorneys fees, and any other damages available under the statute(s).

## FOURTH COUNT

35. For the reasons alleged above, defendants retaliated against plaintiff due to her sex in violation of New York State Human Rights Law §290 *et seq.*

36. Plaintiff seeks damages in excess of $150,000, future earnings, raises, bonuses, gratuities, other benefits she would have received, punitive damages to be determined, costs, attorneys fees, and any other damages available under the statute(s).

## FIFTH COUNT

37. For the reasons alleged above, defendants discriminated against plaintiff due to her sex, sexually harassed her, and subjected her to a hostile work environment in violation of the New York City Administrative Code §8-101 *et seq.*

38. Plaintiff seeks damages in excess of $150,000, future earnings, raises, bonuses, gratuities, other benefits she would have received, punitive damages to be determined, costs, attorneys fees, and any other damages available under the statute(s).

## SIXTH COUNT

39. For the reasons alleged above, defendants retaliated against plaintiff due to her sex in violation of the New York City Administrative Code §8-101 *et seq.*

40. Plaintiff seeks damages in excess of $150,000, future earnings, raises, bonuses, gratuities, other benefits she would have received, punitive damages to be determined, costs, attorneys fees, and any other damages available under the statute(s).

## SEVENTH COUNT

41. For the reasons alleged above, plaintiff has suffered damages for emotional distress in an amount to be determined at trial.

**WHEREFORE**, plaintiff demands judgment as follows:

A. On the first count, damages in excess of $150,000, future earnings, commissions, raises, bonuses, and other benefits she would have received, punitive damages to be determined, costs,

attorneys fees, and any other damages available under the statute(s);

B.  On the second count, damages in excess of $150,000, future earnings, commissions, raises, bonuses, and other benefits she would have received, punitive damages to be determined, costs, attorneys fees, and any other damages available under the statute(s);

C.  On the third count, damages in excess of $150,000, future earnings, commissions, raises, bonuses, and other benefits she would have received, punitive damages to be determined, costs, attorneys fees, and any other damages available under the statute(s);

D.  On the fourth count, damages in excess of $150,000, future earnings, commissions, raises, bonuses, and other benefits she would have received, punitive damages to be determined, costs, attorneys fees, and any other damages available under the statute(s);

E.  On the fifth count, damages in excess of $150,000, future earnings, commissions, raises, bonuses, and other benefits she

would have received, punitive damages to be determined, costs, attorneys fees, and any other damages available under the statute(s);

F. On the sixth count, damages in excess of $150,000, future earnings, commissions, raises, bonuses, and other benefits she would have received, punitive damages to be determined, costs, attorneys fees, and any other damages available under the statute(s);

G. On the seventh cause of action, damages in an amount to be determined at trial; and

D. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
September 22, 2009

_____
Jared Lefkowitz, Esq. (JL 6920)
48 Wall Street, 11th Floor
New York, NY 10005
Tel (917) 887-3920
Fax (917) 591-8991
Email: JaredLefkowitz@yahoo.com
*Attorney for Plaintiff*